# EXHIBIT B-1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

PERSONAL COMMUNICATIONS DEVICES, LLC,

Plaintiff,

v.

AIRTYME COMMUNICATIONS PVT. LTD., RELIANCE COMMUNICATIONS, LLC, PHILIP CHRISTOPHER, LOUIS ANTONIOU, KOSTAS KASTAMONITIS, CORNELIUS VANGINHOVEN, STACY KLUG, EILEEN MCGILLY, AND BONNIE RABINOWITZ,

Defendants.

Index No. 30060/12

**SUMMONS**

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint of the Plaintiff in this action, and serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, upon the undersigned attorneys for the Plaintiff within twenty (20) days after service of the above, exclusive of the date of service or within thirty (30) days after service is complete if service is made by any method other than personal delivery to you within the State of New York.

In the case of your failure to answer the complaint judgment will be taken against you on default for the relief sought in the complaint.

Dated: September 27, 2012
New York, New York

GOODWIN PROCTER LLP

By: /s/ John Farley

~~Richard M. Strassberg~~, Esq.
John O. Farley, Esq.
Jordan D. Weiss, Esq.
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800
Tel.: 212.813.8800
Fax: 212.355.3333

*Counsel for Plaintiffs*
*Personal Communications Devices, LLC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

PERSONAL COMMUNICATIONS DEVICES, LLC,

Plaintiff,

-against-

AIRTYME COMMUNICATIONS PVT. LTD., RELIANCE COMMUNICATIONS, LLC, PHILIP CHRISTOPHER, LOUIS ANTONIOU, KOSTAS KASTAMONITIS, CORNELIUS VANGINHOVEN, STACY KLUG, EILEEN MCGILLY, AND BONNIE RABINOWITZ,

Defendants.

Index No. ____________

**VERIFIED COMPLAINT**

Plaintiff Personal Communications Devices, LLC ("PCD") by its undersigned attorneys, Goodwin Procter LLP, for its Complaint against defendants AirTyme Communications Pvt. Ltd. ("AirTyme"), Reliance Communications, LLC ("Reliance"), Philip Christopher, Louis Antoniou, Kostas Kastamonitis, Cornelius VanGinhoven, Stacy Klug, Eileen McGilly, and Bonnie Rabinowitz (the "Defendants") alleges as follows:

## INTRODUCTION

1. PCD is a major Suffolk County employer, with hundreds of employees and $2.8 billion in sales in 2011. It has been in existence, in one form or another, since the 1970's.

2. PCD's founder and former Chief Executive Officer ("CEO"), Defendant Philip Christopher, is engaged in a self-professed campaign to "tear down" PCD, in violation of the law and the clear terms of his lucrative employment contract with PCD.

3. On August 16, 2012, PCD and its Board of Directors angered Mr. Christopher by announcing their intent to remove him as CEO of the Company, due to his sub-par performance.

4. Between August 16, 2012 and September 4, 2012, while still CEO, Mr. Christopher feigned good-faith negotiations with the Board to retain the title of Chairman and continue with the Company in some capacity.

5. In reality, however, Mr. Christopher had no intention of staying with the Company. Instead, he used that time to secretly orchestrate an illegal scheme to ruin PCD through a series of tortious and wrongful acts and in violation of the law imposing on him a duty of loyalty to his employer.

6. First, Mr. Christopher and some or all of his co-defendants secretly conspired with AirTyme and Reliance to surreptitiously arrange that upon their separation from PCD, dozens of PCD employees at all levels of the Company would leave to accept waiting employment at AirTyme.

7. Second, on information and belief, after separating from PCD and joining AirTyme Mr. Christopher conspired with several PCD employees, including certain officers named as Defendants—who unbeknownst to PCD had already accepted positions at AirTyme—to remain at PCD for a short time while they continued, in violation of the law, to recruit their colleagues and subordinates while misappropriating PCD's confidential information and disrupting key business relationships.

8. Third, on information and belief, and in violation of the law, Mr. Christopher, AirTyme and Reliance caused their employees to utilize the confidential information they learned while employed by PCD (including but not limited to account passwords) to try to access PCD's equipment and databases by fraudulently claiming to still be employed by PCD, in an attempt to misappropriate those resources for AirTyme, disrupt PCD's business and give AirTyme an unfair competitive advantage.

9. On information and belief, Mr. Christopher, AirTyme and Reliance themselves utilized PCD's confidential information in crafting the employment offers they presented to then-current PCD employees. Because, as CEO of PCD, Mr. Christopher had knowledge of what PCD's valuable employees were being paid, he was able to wrongfully use that proprietary and confidential information to craft competitive offers for certain PCD employees.

10. Fourth, on information and belief, Defendants are spreading false rumors concerning PCD, which are designed to create confusion in the market about PCD's viability and corporate status and which are designed to make PCD's suppliers and customers hesitant to continue doing business with PCD. Among other things, Defendants have falsely informed certain of PCD's business counter-parties that, for example, AirTyme has acquired PCD and is in possession of its inventory, over which PCD no longer has control.

11. Fifth, Defendants are engaged in the systematic concealment and destruction of evidence, including emails, reflecting Defendants' misconduct. Because of this campaign of destruction and concealment, little direct pre-discovery evidence is available to Plaintiff. That said, what little direct evidence has been revealed thus far points unequivocally to a scheme to loot PCD of its employees put into operation by Christopher and his gang *prior* to their departures from PCD, and a parallel campaign to defame and disparage PCD in the marketplace in order to steal its customers through wrongful means.

12. Finally, on information and belief and in violation of the law and his lucrative employment contract, which contains a perpetual non-disparagement clause, Mr. Christopher has been lying to PCD's customers and suppliers, including its biggest customer, Verizon Wireless ("Verizon"), and its biggest supplier, High Tech Computer Corp. ("HTC"), falsely claiming that as a result of employee defections at PCD (which Mr. Christopher himself illegally conspired to

cause while still PCD's CEO) PCD would not be able to meet its obligations under its contracts.

## PARTIES

13. Plaintiff Personal Communications Devices, LLC, is a Delaware limited liability company, and has its principal place of business at 555 Wireless Blvd., Hauppauge, NY 11788.

14. Defendant AirTyme Communications Pvt. Ltd. is a private company limited by shares, with its principal place of business at 1850 Lakeland Avenue, Ronkonkoma, NY 11779.

15. Defendant Reliance Communications, LLC, is a New Jersey limited liability company, with its principal place of business at 380 Rabro Drive, Hauppauge, New York 11788.

16. Defendant Philip Christopher is an individual residing at 108 Fairway View Drive, Commack, New York 11725.

17. Defendant Kostas Kastamonitis is an individual residing at 443 Echo Avenue, Sound Beach, NY 11789.

18. Defendant Louis Antoniou is an individual residing at 15 Braemer Road, East Setauket, NY 11733.

19. Defendant Stacy Klug is an individual residing at 17 Half Hollow Road, Holbrook, NY 11741.

20. Defendant Cornelius VanGinhoven is an individual residing at 7 Forsythe Meadow Lane, Stony Brook, NY 11790.

21. Defendant Eileen McGilly is an individual residing at 23 Williams Blvd 2F, Lake Grove, NY 11755.

22. Defendant Bonnie Rabinowitz is an individual residing at 170 Storm Drive, Holtsville, NY 11742.

## JURISDICTION AND VENUE

23. At all times relevant to this action, the Defendants have transacted and continue to transact business in the State of New York.

24. The employment agreement between PCD and Mr. Christopher was entered into in New York, and by its terms is governed by the law of New York.

25. The majority of the Defendants' tortious conduct alleged in this Complaint took place in New York.

26. Plaintiff and Defendants either reside or have their principal places of business in New York.

27. Venue for this action is proper in Suffolk County pursuant to CPLR § 503(c) as PCD, AirTyme and Reliance maintain their principal places of business therein.

## FACTUAL ALLEGATIONS

*The Parties*

28. PCD is in the business of buying cellular phones from manufacturers (such as HTC) and conforming and customizing those phones for sale by their carrier clients (such as Verizon) to the carrier's ultimate customers. PCD's largest supplier of cell phones is HTC and its largest customer is Verizon.

29. PCD has been in business, in one form or another, since the 1970s.

30. PCD has hundreds of employees and in 2011 had sales of approximately $2.8 billion.

31. Mr. Christopher had been the CEO of PCD, or its predecessor entities, since the 1970s. On or about August 16, 2012, however, the Board conveyed to Mr. Christopher its decision to remove him as CEO of PCD.

32. AirTyme is in the business of "reverse logistics," historically focusing on the repair and the sale of refurbished or surplus cellular equipment. Until Mr. Christopher's departure from PCD, AirTyme did not compete with PCD. However, Mr. Christopher has, beginning while he was still employed by PCD as its CEO built a new division at AirTyme, which is intended to compete directly with PCD's core business.

33. Reliance has historically been a customer of PCD and also has not competed with PCD. Reliance is an AirTyme affiliate, and Reliance's CEO and Chief Financial Officer ("CFO") participated in Mr. Christopher's scheme, as alleged herein, including in connection with the recruiting of PCD employees to AirTyme.

34. Louis Antoniou is a former PCD employee, now AirTyme employee. While at PCD Mr. Antoniou was Vice President of International Sales and Member of the Board of Directors. Mr. Antoniou gave notice of his resignation from PCD on September 5, 2012 and remained a PCD employee until September 19, 2012.

35. Kostas Kastamonitis is a former PCD employee, now AirTyme employee. While at PCD, Mr. Kastamonitis was Vice President of Product Development & Engineering. Mr. Kastamonitis gave notice of his resignation from PCD on September 5, 2012 and remained a PCD employee until September 12, 2012.

36. Cornelius VanGinhoven is a former PCD employee, now AirTyme employee. While at PCD, Mr. VanGinhoven was Vice President of Engineering. Mr. VanGinhoven gave notice of his resignation from PCD on September 5, 2012 and remained a PCD employee until September 19, 2012.

37. Stacy Klug is a former PCD employee, now AirTyme employee. While at PCD, Ms. Klug was Director of International Operations. Ms. Klug gave notice of her resignation from PCD on September 6, 2012 and remained a PCD employee until September 19, 2012.

38. Eileen McGilly is a former PCD employee, now AirTyme employee. While at PCD, Ms. McGilly was a Senior Marketing Manager. Ms. McGilly gave notice of her resignation from PCD on September 6, 2012 and remained a PCD employee until September 20, 2012.

39. Bonnie Rabinowitz is a former PCD employee, now AirTyme employee. While at PCD, Ms. Rabinowitz was a Senior Administrative Assistant. Ms. Rabinowitz gave notice of her resignation from PCD on September 6, 2012 and remained a PCD employee until September 14, 2012.

***Defendants' Pre-Orchestrated Scheme is Revealed***

40. The day after Mr. Christopher resigned, September 5, 2012, three of PCD's high-level employees, Kostas Kastamonitis, Louis Antoniou and Cornelius VanGinhoven, resigned their jobs at PCD and took immediate and waiting employment at AirTyme, an affiliate of Defendant Reliance.

41. On that same day, indeed, by 10:40 a.m., Mr. Christopher himself was employed by AirTyme, already furnished with an AirTyme email address, and was actively recruiting additional PCD employees, PCD suppliers and PCD customers (offering one supplier a $20 million all-cash deal). Notably, Mr. Christopher's offer concerns a new Pantech device which has not yet been revealed to the market. Mr. Christopher learned of the device as PCD's CEO because PCD performed work on the device for Pantech and Verizon. Such information is confidential and Mr. Christopher should not be trading on it.

42. On the following two days, September 6 and September 7, 2012, an additional 42 PCD employees quit their jobs at PCD and took immediate and waiting employment at AirTyme. These resignations were, in the words of Defendant VanGinhoven, "orchestrated" by certain Defendants prior to their departures from the Company, including Mr. Christopher, and therefore in violation of their duty of loyalty.

*Breaches of the Duty of Loyalty*

43. At the same time that Mr. Christopher and his executives were physically leaving PCD, many more PCD employees, who on information and belief Mr. Christopher had already hired for AirTyme, stayed behind at PCD to continue AirTyme's recruiting efforts.

44. On information and belief, on September 6, 2012, while still an employee of PCD, Eileen McGilly contacted hcr subordinate, Adrian O'Hare, in an effort to recruit her to work at AirTyme. Ms. McGilly told Ms. O'Hare that she could offer her a job at AirTyme because Mr. Christopher "wanted [Ms. O'Hare's] group to work at his new company". Interested, Mr. O'Hare accompanied Ms. McGilly to AirTyme, where in the presence of many other then-current PCD employees, Mr. Christopher gave a speech extolling the virtues of working at AirTyme over PCD.

45. On information and belief, on September 6, 2012, while still an employee of PCD, Kostas Kastamonitis contacted his subordinate, Sanjeev Sam (a talented engineer), and offered him a $20,000 signing bonus and a 20% raise if he came to work at AirTyme.

46. On that same day, while still an employee of PCD, Mr. Kastamonitis exchanged emails with Defendant Reliance, AirTyme's affiliate, through which he helped craft a recruitment offer for a PCD employee by divulging the salary that PCD was currently paying that employee.

47. On information and belief, on September 7, 2012, while still an employee at PCD, Stacy Klug contacted her subordinate, Carly Sneider, with an offer of employment from AirTyme.

48. As a result of the Defendants' manipulations, by Friday, September 7, 2012, just three days after Mr. Christopher resigned from PCD, fourteen of eighteen PCD engineers had taken employment at AirTyme. It is this mass departure of engineers that Defendant VanGinhoven admitted via text message to having "orchestrated" while both he and Defendant Christopher remained employed by PCD, infra ¶ 42. In all, within seventeen days of Mr. Christopher's termination, seventy-four employees resigned from PCD to take employment with AirTyme.

49. Separately, on information and belief, Defendants, individually and on behalf of AirTyme, began utilizing valuable and confidential information they had obtained while working at PCD.

50. On information and belief, on September 18, 2012, Defendant Bonnie Rabinowitz, a former PCD employee/current AirTyme employee, contacted Verizon and falsely informed Verizon that PCD had been acquired by AirTyme. Ms. Rabinowitz then wrongly instructed Verizon to transfer from PCD to AirTyme control of thirty-six phone lines being used by PCD to conduct critical lab testing necessary for PCD to perform under its contract with Verizon.

51. Until recently, PCD believed it had intervened in time and stopped this misappropriation, however, it now appears that one line, once used by Mr. Kastamonitis when he was employed by PCD, is no longer accessible to PCD, because, on information and belief, it was transferred to AirTyme before Mr. Kastamonitis left.

52. Defendants began planning these attacks on PCD long before they ceased being employed by PCD.

53. At all times, Defendants were well aware of the duty of loyalty which the Defendants owed PCD, and that their conduct violated that duty.

*Mr. Christopher Disparages & Defames PCD to its Most Important Customers and Suppliers*

54. On information and belief, in addition to the overtly tortious assaults on PCD described above, Mr. Christopher has engaged in a campaign to destroy PCD's reputation in the industry and sow fear with its customers and suppliers that PCD is going out of business and will not be able to fulfill its contractual obligations.

55. Just one day after Mr. Christopher left PCD (indeed, by 10:40 a.m.), he had "explained the whole situation" to Verizon's chairman and was fast at work defaming and disparaging PCD and PineBridge (a majority shareholder of PCD, whose representatives have a controlling vote on the PCD Board of Directors) to Pantech:

> My friend, in our cultures, words like honesty, honor, integrity and courage are not taken lightly. Pinebridege will learn that they cannot abuse their majority. In America, minority (management has rights). I rely on your friendship and as you say, "your big brother needs you."

56. The implication of Mr. Christopher's statement is clear: PineBridge and the board of PCD are dishonest, dishonorable, and lack integrity, and Pantech should not do business with them. Mr. Christopher further defamed PCD and its investors to Pantech:

> I did not get a chance to see you prior to your departure from New York last month. Yesterday was my last day at PCD and unfortunately, the investors (PineBridge) ***violated and trampled*** the Operating Agreement. They basically forced me out of PCD and ***now my investment is in serious jeopardy.***

By this email, Mr. Christopher falsely informed Pantech that the Company had "violated and trampled" an agreement and that his "investment is in serious jeopardy," *i.e.*, that the value of his ownership stake in PCD was jeopardized.

57. Mr. Christopher repeated these false claims to Hitachi High Technologies America, Inc. ("Hitachi"), another PCD supplier:

> As we discussed, yesterday was my last day at PCD. The investors (Pinebridge) violated and trampled on the Operating Agreement and against the wishes of management, they appointed a new CEO.

58. Besides plainly violating his employment contract, this statement strongly suggests that Mr. Christopher began to engage Hitachi in discussions disparaging his employer while he was still employed by PCD ("*As we discussed*, yesterday was my last day . . .").

59. On information and belief, Mr. Christopher is also defaming and disparaging PCD to its largest customers and suppliers, such as Verizon and HTC.

60. Soon after resigning from PCD, Mr. Christopher began meeting with executives at Verizon.

61. Immediately following Mr. Christopher's meetings with Verizon, Verizon contacted PCD and requested – for the first time in the parties' long business relationship – that PCD establish to Verizon's satisfaction that PCD was a viable entity not in danger of going out of business, which would be able to service Verizon's business.

62. Similarly, Mr. Christopher met recently with HTC. Following that meeting with HTC, PCD's most important supplier, an executive at HTC sent PCD's new CEO an email explaining that "there is a lot of concern about PCD's ability to continue business with the departure of so many people.... there is a lot of hallway chatter, ***and Philip [Christopher] is fanning the flame.***"

63. As Mr. Christopher knows, PCD is in not going out of business. Nor is it unable to perform its duties under its contracts.

64. However, for PCD's largest customers and suppliers, like Verizon and HTC, the mere prospect of PCD's failure is threatening as it would result in significant economic losses for them as well. Accordingly, PCD has been forced to expend significant resources attempting to mend its relationships with its suppliers and customers and dispelling Mr. Christopher's lies.

65. Finally, on information and belief, Defendants have begun a campaign to spread the rumor in the marketplace that PCD has been purchased by AirTyme and that AirTyme is in control of PCD's inventory of cellular phones. This lie has spread quickly and as a result many long time PCD customers have expressed concerns about working with PCD based on the false premise that PCD does not control its own inventory, when in fact it does. In one instance, PCD has had to provide up to 300 Electronic Serial Numbers (cellular phone identification numbers) to prove to its customer that it was in possession of the devises it was trying to sell. In other words, Defendants have attempted to compromise PCD's credibility in the market place.

66. Moreover, these events have been enormously distracting to PCD's executive team, Board and sales force and continues to tarnish PCD's otherwise excellent reputation in the industry.

*Mr. Christopher Has Violated his Employment Contract with PCD*

67. On June 30, 2008, PCD and Mr. Christopher entered into a valid and binding employment agreement (the "Employment Agreement").

68. Section 6(e) of the Employment Agreement states that:

> The Executive agrees that at any time during his employment with the Company and at any time thereafter, the Executive shall not … make, or cause or assist any other person to make, any statement or other communication that impugns or attacks, or is otherwise critical to the

reputation, business or character of the Company or any of its officers, directors, employees, products or services.

69. Mr. Christopher's obligations, set forth in Section 6(e) continue in perpetuity.

70. On information and belief, Mr. Christopher violated Section 6(e) of the Employment Agreement by, among other things, falsely informing PCD's customers that PCD would soon be out of business.

71. Mr. Christopher further violated Section 6(e) of the Employment Agreement by, among other things, suggesting to Pantech that PCD, its Board of Directors and/or investors were dishonest, dishonorable and lacked integrity and that they themselves "trampled" Mr. Christopher's contract with PCD and had jeopardized the value of PCD.

## COUNT I

*(Breach of Duty of Loyalty – Philip Christopher)*

72. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs and the paragraphs below with the same force and effect as if hereinafter fully set forth at length.

73. Until September 4, 2012, Mr. Christopher was the CEO of PCD.

74. In his capacity as CEO, Mr. Christopher owed PCD a duty of loyalty.

75. Upon information and belief, Mr. Christopher breached this duty by, and among other things:

- Designing a scheme to "tear down" PCD by creating a new business to compete directly with PCD while still the CEO of PCD;
- Soliciting and arranging for PCD employees to quit working at PCD while still the CEO of PCD;
- Utilizing PCD's confidential information, including information regarding salaries of PCD employees, to lure away then-current PCD employees to work at his new business with AirTyme and Reliance;

- Defaming and disparaging PCD to its suppliers and customers, while still the CEO of PCD.

76. Upon information and belief, Mr. Christopher breached his duty of loyalty willfully, maliciously and for his own personal benefit and the benefit of AirTyme and Reliance.

77. As a direct and proximate result of Mr. Christopher's breach, PCD has been damaged in an amount to be proven at the trial of this action.

78. As a direct and proximate result of Mr. Christopher's breach, PCD suffered and continues to suffer incalculable loss and damages and irreparable harm.

## COUNT II

***(Breach of Duty of Loyalty – Louis Antoniou, Kostas Kastamonitis, Cornelius VanGinhoven, Stacy Klug, Eileen McGilly, and Bonnie Rabinowitz)***

79. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs and the paragraphs below with the same force and effect as if hereinafter fully set forth at length.

80. While employed at PCD, Louis Antoniou, Kostas Kastamonitis, Cornelius VanGinhoven, Stacy Klug, Eileen McGilly, and Bonnie Rabinowitz knowingly and willfully breached the duty of loyalty they owed to PCD by:

a. Soliciting then-current PCD employees to leave PCD to work for a competitor, AirTyme; and

b. Destroying or attempting to destroy PCD company property, specifically, emails containing evidence of their breaches.

81. Kostas Kastamonitis knowingly and willfully breached the duty of loyalty he owed to PCD by providing PCD's confidential information to PCD's competitor for the purposes of giving PCD's competitor an unfair advantage in negotiations with then-current PCD employees.

82. Kostas Kastamonitis, Cornelius VanGinhoven and Bonnie Rabinowitz knowingly and willfully breached the duty of loyalty they owed to PCD by conspiring to steal and stealing PCD's Verizon test lines for the benefit of the Defendants.

83. At all times relevant to the above-referenced allegations, Mr. Antoniou, Mr. Kastamonitis, Mr. VanGinhoven, Ms. Klug, Ms. McGilly, and Ms. Rabinowitz were employed by PCD.

84. As a direct and proximate result of Defendants' breaches, PCD has been damaged in an amount to be proven at the trial of this action.

85. As a direct and proximate result of Defendants' breaches, PCD suffered and continues to suffer incalculable loss and damages and irreparable harm.

## COUNT III

***(Aider and Abettor Liability for Breaches of the Duty of Loyalty – Philip Christopher, Kostas Kastamonitis, Cornelius VanGinhoven, AirTyme and Reliance)***

86. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs and the paragraphs below with the same force and effect as if hereinafter fully set forth at length.

87. Messrs. Christopher, Kastamonitis and VanGinhoven, and Defendants AirTyme and Reliance were at all times aware of the duty of loyalty that PCD's employees owed to PCD.

88. Messrs. Christopher, Kastamonitis and VanGinhoven, and Defendants AirTyme and Reliance were at all times aware of the conduct of the Defendants' that is described in this Complaint and caused and/or supported that conduct, including the breaches of the duty of loyalty by the other Defendants.

89. Messrs. Christopher, Kastamonitis and VanGinhoven, and Defendants AirTyme and Reliance provided substantial assistance to the other Defendants in their breach of their duty

of loyalty to PCD by, among other things; (a) identifying which PCD employees AirTyme wanted to hire; (b) providing information concerning each target PCD employee's pay scale; and (c) promoting the other Defendants' efforts in breach of their duty of loyalty through speeches and other forms of support.

90. As a direct and proximate result of the Defendants' breaches, PCD has been damaged in an amount to be proven at the trial of this action.

91. As a direct and proximate result of Defendants' breaches, PCD suffered and continues to suffer incalculable loss and damages and irreparable harm.

## COUNT IV

*(Defamation – Philip Christopher, AirTyme and Reliance)*

92. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs and the paragraphs below with the same force and effect as if hereinafter fully set forth at length.

93. On information and belief, individually, and on behalf of AirTyme and Reliance, Mr. Christopher made false and slanderous statements to HTC and Verizon, PCD's (most important supplier and customer, respectively) concerning PCD's vitality and ability to meet its contractual obligations. Mr. Christopher, AirTyme and Reliance know these representations were false, but made them for the purpose of interfering with these critical relationships so that Defendants might take over PCD's performance under those contracts.

94. On information and belief, individually, and on behalf of AirTyme and Reliance, Mr. Christopher made false and slanderous statements to Pantech and Hitachi, suppliers to PCD. Mr. Christopher told Pantech that PCD and PineBridge are dishonest, dishonorable and lack integrity. Mr. Christopher also told Pantech and Hitachi that PCD and its investors breached his agreement with him.

95. As a direct and proximate result of these defamations, PCD suffered injury in an amount to be proven at the trial of this action.

96. As a direct and proximate result of this conspiracy, PCD suffered and continues to suffer additional incalculable loss and damages and irreparable harm.

**COUNT V**

***(Breach of Contract – Philip Christopher)***

97. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs and the paragraphs below with the same force and effect as if hereinafter fully set forth at length.

98. On June 30, 2008, PCD and Mr. Christopher entered into an Employment Agreement.

99. The Employment Agreement is a valid and binding contract and PCD has fully performed thereunder.

100. Under Section 6(e) of the Employment Agreement, Mr. Christopher is prohibited from "make[ing]….any statement or other communication that impugns or attacks, or is otherwise critical to the reputation, business or character of the Company or any of its officers, directors, employees, products or services."

101. Mr. Christopher's obligations, as set forth in Section 6(e) continue in perpetuity.

102. Mr. Christopher violated Section 6(e) of the Employment Agreement by, among other things, falsely informing PCD's customers and suppliers that PCD would soon be out of business and could not perform under its contract.

103. Mr. Christopher further breached his obligations under Section 6(e) by defaming PCD to Pantech and Hitachi, suppliers of PCD.

104. As a direct and proximate result of Mr. Christopher's breach, PCD suffered injury.

105. As a direct and proximate result of Mr. Christopher's breach, PCD suffered and continues to suffer loss and damages in an amount to be proven at the trial of this action.

106. As a direct and proximate result of this conspiracy, PCD suffered and continues to suffer incalculable loss and damages and irreparable harm.

## COUNT VI

*(Tortious interference with prospective business advantage – All Defendants)*

107. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs and the paragraphs below with the same force and effect as if hereinafter fully set forth at length.

108. PCD has business relationships with, among others, Pantech, Hitachi, Verizon, and HTC.

109. Defendant Bonnie Rabinowitz has tortiously interfered with and damaged those relationships by, among other things, conspiring to steal and stealing equipment necessary to PCD's business for the benefit of AirTyme, the Defendants.

110. Bonnie Rabinowitz has also tortiously interfered with and damaged those relationships by fraudulently and falsely informing Verizon that PCD had been acquired by AirTyme and by directing Verizon to give control over equipment necessary to PCD's business to its competitor, AirTyme.

111. Cornelius VanGinhoven has tortiously interfered with and damaged those relationships by, among other things, conspiring to steal and stealing equipment necessary to PCD's business for the benefit of AirTyme, the Defendants.

112. On information and belief, Mr. Christopher, AirTyme and Reliance have tortiously interfered with and damaged those relationships by, among other things, conspiring with Defendants Kastamonitis, Rabinowitz, and VanGinhoven to steal and attempt to steal PCD's property, as described herein.

113. On information and belief, Mr. Christopher, AirTyme and Reliance have tortiously interfered with and damaged those relationships by, among other things defaming PCD to its customers and suppliers as described herein, but including by spreading rumors in the market that PCD has been acquired by AirTyme.

114. On information and belief, Defendants acted together, agreed and conspired to interfere with PCD's business relationships and committed overt acts in furtherance of their plan by, among other things, defaming PCD and attempting to steal its equipment and employees as described in the paragraphs above.

**COUNT VII**

*(Conversion – All Defendants)*

115. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs and the paragraphs below with the same force and effect as if hereinafter fully set forth at length.

116. Defendants conspired, attempted and did convert, for their own benefit and the benefit of each other Defendant, property belonging to PCD.

117. Defendants did so with the intent to deprive PCD of this property and to enrich themselves and each other Defendant as a result of the same.

118. On information and belief, Defendants committed overt acts in furtherance of their plan by, among other things, exercising dominion or control over Verizon phone lines belonging to PCD.

119. At all times Defendants were aware that the Verizon phone lines belonged to PCD and that they had no right to make use of or exercise dominion or control over the Verizon phone lines, outside of their duties as employees of PCD.

120. As a result of Defendants' actions, PCD has been deprived access to its property and suffered damages in an amount to be proven at trial as a result of the same.

WHEREFORE, Plaintiff Personal Communications Devices, LLC, by its undersigned attorneys, Goodwin Procter LLP, for its Complaint against the Defendants AirTyme Communications Pvt. Ltd. ("AirTyme"), Reliance Communications, LLC ("Reliance"), Philip Christopher, Louis Antoniou, Kostas Kastamonitis, Cornelius VanGinhoven, Stacy Klug, Eileen McGilly, and Bonnie Rabinowitz, respectfully requests that the Court grant the following relief:

1. Enter judgment in favor of Plaintiff on all counts of this Complaint; or

2. Order that Philip Christopher comply with his employment agreement and permanently cease disparaging PCD to its customers, vendors, suppliers, service providers, partners and others;

3. Order that Defendants, and their officers, agents, employees, attorneys and those in concert or participation with them, be permanently enjoined from defaming PCD to its customers, vendors, suppliers and partners;

4. Order that Philip Christopher, Kostas Kastamonitis, Cornelius VanGinhoven, AirTyme and Reliance immediately and permanently cease causing, directing, aiding or abetting any current PCD employees to breach his or her duty of loyalty to PCD in anyway, including but not limited to by causing any current PCD employee to solicit any other current PCD employees to engage in any business away from PCD;

5. Order that Defendants immediately and permanently cease tortuously interfering with any business relationships PCD has with any supplier, customer or service provider, including but not limited to contacting in anyway, or causing anyone to contact in anyway, any entity providing services or supplies to PCD under the false and fraudulently auspice of PCD authority;

6. Order that the Defendants remit to Plaintiff any and all of PCD's property that was wrongly converted by the Defendants;

7. Order that the Defendants pay damages in an amount to be determined at trial as a result of the conduct described in this Complaint;

8. Award Plaintiff prejudgment interest;

9. Award Plaintiff its costs, expenses and attorneys' fees; and

10. Enter such further and additional relief as the Court deems to be appropriate.

Respectfully submitted,

By its attorneys,

GOODWIN PROCTER LLP

Richard M. Strassberg, Esq.
John O. Farley, Esq.
Jordan D. Weiss, Esq.
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
Fax: (212) 355-3333

Dated: September 27, 2012
New York, New York

# VERIFICATION

I, George Appling, Chief Executive Officer of Personal Communications Devices, LLC, hereby certify and verify under penalty of perjury that based on my own review, and that of my staff, of the matters set forth in the attached complaint, I am fully familiar therewith and the statements set forth in the complaint are true and correct to the best of my knowledge.

Dated: September 24, 2012

George Appling

Sworn to before me this 24th day of September, 2012

Notary Public, State of California
No 1894980
Qualified in Los Angeles County
Commission Expires July 10, 2014

M. ANGIE GARCIA
Commission # 1894980
Notary Public - California
Los Angeles County
My Comm. Expires Jul 10, 2014